Peelle, J.,
delivered the opinion of the court:
The claim in this case comes before the court by reference from the Secretary of the Treasury on the recommendation of *592 the Comptroller of the Treasury, under section 2, act of March 3, 1883 (22 Stat. L., p. 485), which reads:
“ Seo. 2. That when a claim or matter is pending in any of the Executive Departments which may involve controverted questions of fact or law, the head of such Department may transmit the same, with the vouchers, papers, proofs, and documents pertaining thereto, to said court, and the same shall be there proceeded in under such rules as the court may adopt. When the facts and conclusions of law shall have been found the court shall not enter judgment thereon, but shall report its findings and opinions to the Department by which it was transmitted for its guidance and action.”
Although the action of the Comptroller in reporting the matter to the Secretary of the Treasury for reference to the court purports to have been at the request of the claimant company, the company, under date of June 1, 1890, through its general passenger agent, E. A. Eord, addressed a letter to the clerk of this court in which, referring to the reference of the case by the Secretary of the Treasury, he says: “I beg leave to respectfully inform you that the Pennsylvania Company does not care to avail itself of the privilege of being-represented by counsel in the hearing of this case.”
Nevertheless, under the provisions of the statute cited the Secretary of the Treasury is entitled to have the facts found by the court, with its conclusions of law thereon, together with its opinion, for the ‘ ‘ guidance and action ” of the Department, and we will, therefore, endeavor to answer the questions propounded in their order.
“(1) Did the provisions of Joint Traffic Association circular No. 26 go into effect and operation on the date of its issue without any subsequent action on the part of the constituent members of said association? ”
As the circular issued by the Joint Traffic Association was intended to apply only to the United States military and naval forces and their equipments and supplies, as expressed in the circular, the same would not, of course, go into effect by its own operation; but whether the provisions of the circular went into operation on the day of its issue without subsequent action on the part of the constituent members of the association is immaterial, since the findings show that the provisions *593 of the circular with or without such action were never accepted bj- the Government, without which no contract was entered into between it and the claimant company in relation thereto.
That the provisions of the circular, however, were intended in the nature of a proposition-both to the constituent members of the association and to the Government seems evident from the language, setting forth the purpose of the circular, wherein it is said “the managers hereby recommend the following rates, faros, and charges upon the traffic subject to their jurisdiction, the same to apply only when the transportation is performed solely for the account of the United States, upon its requisitions, and as to freights, upon its bills of lading.” Then follow the rates, and in paragraph eleven it is provided that:
“In view of the reduction made, it is understood that the Government will arrange to accept the net figures and not ask for bids, and will also endeavor to divide the traffic fairly among the several carriers. If, however, bids are asked for, it is recommended that the above uniform net figures be given.”
The Government declined to ‘‘•accept the net figures,” as the findings show, and in lieu thereof, on June 15, 1898, the Quartermaster-General instructed the chief quartermaster, Department of the Lakes, Chicago, Ill., that “the circular herein referred to has no binding effect upon the Quartermaster’s Department or its officers, as it was only recommended by the Joint Traffic Association. He will, therefore, continue to invite competition for the best rates obtainable;” which was done, and troops were transported under contracts made pursuant to such bids.
Whether the constituent members of the association, or any of them, did, as a matter of fact, accept the provisions of the circular and enter into several contracts with the Government on the basis of the rates set forth therein, does not appear, except as shown in the findings in respect of the claimant company.
Furthermore, the provisions of said circular, as construed by the Central Passenger Association in' October, 1898, were not intended to apply to the transportation of individual soldiers, for which the claim in suit was transmitted to the court, *594 What the effect would have been had the Government accepted the provisions of the circular it is not necessary to decide.
. “ (2) If question No." 1 be answered in the affirmative, to what companies and lines of railroads and over what territory did the rates provided in said circular apply ?” (See Traveler’s Official Guide, page lvii, for May, 1898, herewith.)
The only information we have in respect of what companies and over what territory they operate is set forth in the case of the United States v. Joint Traffic Association (171 U. S. R., 505, and the Traveler’s Official Guide), to which reference is made in the foregoing question, and we are unable to answer further, even if it were material, though, in view of our negative answer to the first question, it is unnecessary.
“ (3) If question No. 1 be answered in the affirmative, did the decision of the Supreme Court in case of United States v. Joint Traffic Association (171 U. S. R., 505, 578) have the effect of abrogating and withdrawing the rates provided in Circular No. 26 from and after the date of the decision of said court, or from any other date ? If from any other date, what date? ”
As the acceptance of the provisions of the circular by the Government, as we hold, was essential to constitute a contract between it and the claimant company, and there was no such acceptance, there were no rates to abrogate or withdraw.
“ (4) If the decision of the Supreme Court (supra) did not have the effect of abrogating and withdrawing the rates mentioned, did the Central Freight Association, or any other association of railroad companies, have the power to speak and act for the constituent members of the Joint Traffic Association in withdrawing said rates; specifically, did Information Circular No. 9, of December 22, 1898, of the Central Freight Association, have the effect of withdrawing the freight rates provided in Circular No. 26 from and after January 1, 1899, as to all lines and companies represented in said association; also from all lines and companies represented in the Trunk Line Association? (See Information Circular No. 9, copy herewith, marked ‘Exhibit C.’)”
Although this question is beyond the scope of the claim referred, which is for the transportation of individual soldiers and not for freight, we will say that as there were no rates agreed upon between the Government and the association *595 there were none to withdraw by either the Joint Traffic Association or any other association or constituent member thereof.
“(5) As the Joint Traffic Association was dissolved some time in 1898 — date not known — must each company represented in said late association desiring to withdraw the rates fixed in Circular No. 26 have to act each for itself; or can some other association of which the company is a member act for said company in withdrawing said rates ? ”
As the circular was in the nature of a proposition to the Government to transport troops and supplies which was never accepted by it, there was no contract binding on either party, and hence so far as the Joint Traffic Association avíis concerned the rates it proposed Went out of existence Avith its dissolution.
In this vieAV of the case it is immaterial to inquire as to the scope of the authority of the War Department or its officers to bind the Government by acceptance, Anthout advertisement, of the transportation rates so proposed.
The clerk of this court is directed to certify the foregoing findings and opinion to the Secretary of the Treasury.
Nott, Ch. J., was absent when this case was decided.